REVISED, APRIL 28, 2000

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 98-50554

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANKLIN Y WRIGHT, JR; ANNETTE RYAN
WRIGHT, also known as Annette S Wright,
also known as Annette Kaufman Wright;
ROBERT E BARGER,

Defendants-Appellants.

Appeals from the United States District Court
For the Western District of Texas

April 27, 2000

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit
Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This appeal presents various challenges to the tax evasion-related convictions of Franklin Wright, his wife Annette Wright, and Franklin's attorney and tax preparer, Robert Barger. Barger also appeals his sentence. We reject the defendants' legal challenges to the convictions and find that the evidence was sufficient to support each of the verdicts. Because it appears that the district court believed it could not downward depart under the Sentencing Guidelines based on a discrepancy in sentences among the co-defendants, we remand for the re-sentencing of Barger.

I

The charges against all of the defendants stem from tax deficiencies owed by Franklin Wright for 1986, 1987 and 1988. Collection proceedings began in 1988, and the Internal Revenue Service ("IRS") and Franklin began a long period of negotiation.

In August 1992, Barger submitted an Offer in Compromise to the IRS and set up a $5,000-a-month payment plan for Franklin, which Franklin followed until December 1994. Although the offer was substantial, the IRS eventually rejected it because Franklin failed to provide required additional information. Through seizures and voluntary payments, however, Franklin eventually paid about $490,000 toward his tax liability of $419,000, not including penalties and interest.

Franklin and Annette married in 1989, after Franklin accumulated his deficiency. The government charged Annette with assisting Franklin in hiding assets from the IRS. In August 1992, while the Offer in Compromise was pending, Annette decided to sell the home she had owned before her marriage to Franklin and buy a new house. Annette claims that she was unable to secure financing for the home because of Franklin's tax problems. She asked a friend, Caroline Haggard, to buy the home in Haggard's name and stated that she would assume the mortgage once the tax issues had been resolved. Haggard agreed to this arrangement.

Franklin and Annette brought her almost $150,000 for the house in a bag containing $100 bills. Franklin told Haggard that the cash was money from his law practice. Haggard testified at trial that the Wrights assured her that the taxes had been paid on the

2

money but warned that she should avoid depositing the funds in the bank to avoid problems with the IRS.

Haggard decided to deposit the money anyway, resulting in a report to the IRS. She called Barger for advice, and Barger asked her why she had deposited the money when she had been told not to. Barger also participated in the home purchase in other ways: he assisted Haggard in gathering financial records in order to qualify for the mortgage; drew up papers transferring the mortgage to Annette; and loaned Franklin $64,000 for the remainder of the down payment. In April 1993, Barger submitted an amendment to the Offer in Compromise stating that the Wrights had sold their house because they could no longer make mortgage payments and were now renting. The form did not list the new home as potential community property.

The government indicted the Wrights, Barger and Haggard for conspiracy to defraud, Franklin for tax evasion, and Barger for making false statements. Haggard, also facing prosecution on unrelated Medicaid fraud charges, plead guilty to all charges and testified on behalf of the government. A jury found all three of the others guilty.[1] The district court sentenced Franklin to concurrent 12-month terms. Annette received five years' probation so that she could care for the couple's small children. Barger received concurrent 18-month terms; his sentence included a two-point enhancement for use of a special skill. Haggard attempted to withdraw her plea after the trial, claiming that she was innocent

---

[1]Barger was acquitted on one of the counts of making false statements.

3

of the tax charges; her appeal proceeded separately and was rejected by a panel of this court. At issue today are the appeals of the other three defendants.

II

All three defendants raise several legal challenges to the convictions. First, they claim that the convictions are improper because Franklin had no underlying tax deficiency. Franklin contends that he owed only interest and penalties and could not be prosecuted for evasion if no tax was owed.

The Supreme Court has held that the elements of Internal Revenue Code ("I.R.C.") § 7201, the provision criminalizing the evasion of taxes, include the existence of a "tax deficiency."[2] While § 7201 does not describe "tax deficiency," it is defined elsewhere in the IRC as the amount by which the tax exceeds the tax reported on the return plus the amounts previously assessed as a tax deficiency.[3] The IRC specifically excludes interest from being treated as tax for purposes of deficiency procedures.[4] The Sentencing Guidelines also exclude interest and penalties in assessing the penalty for tax evasion.[5]

Although the deficiency procedures are separate from the criminal liability provisions, we are persuaded that the definition

---

[2]See Sansone v. United States, 380 U.S. 343, 351 (1965).

[3]See I.R.C. § 6211.

[4]See § 6601(e).

[5]See U.S. SENTENCING GUIDELINES MANUAL § 2T1.1 & App. Notes; United States v. Clements, 73 F.3d 1330, 1339 (5th Cir. 1996).

4

of "tax liability" excluding penalties and interest extends to § 7201. We decline to assume a broader meaning for a "tax deficiency" under § 7201 than under the deficiency proceedings provision, especially when § 7201 attaches criminal liability to the debt owed. The Guidelines merely confirm our conclusion.

Franklin fails to demonstrate, however, that he owed no tax during the alleged period of evasion. Although his total payments eventually exceeded his tax owed, the IRS collected a significant portion of the paid amounts through seizure. The IRS applied the seized amounts according to its normal procedure, which is first to extinguish the taxpayer's total tax, interest and penalties for the earliest year owed.[6] Franklin cites no authority for the proposition that his requests as to how the IRS should apply his voluntary payments must also have been honored as to the seized amounts.[7] Without having all of the seized amounts first applied to his tax liability, Franklin continued to have a tax deficiency.[8]

The defendants also argue that the indictments under 18 U.S.C. § 371 impermissibly varied from the proof presented at trial. Section 371 has two prongs: it prohibits a conspiracy to commit an offense against the United States, or one to defraud the United

---

[6]See Rev. Ruling 73-305, 1973-2 C.B. 43, amended by Rev. Ruling 79-284, 1979-2 C.B. 83.

[7]We are unpersuaded that Franklin had such a right under the Due Process Clause of the Constitution.

[8]Even if successful, this argument would affect only the I.R.C. § 7201 conviction and not the convictions based on conspiracy under 18 U.S.C. § 381. The latter provision prohibits the defrauding of the United States, not just the evasion of taxes.

States.  The first prong refers to specific offenses criminalized elsewhere in the federal code; the second stands independently. The government charged the defendants with conspiracy to defraud. Franklin argues that the defrauding indictment was impermissible because the alleged conduct could have been charged as a specific offense: concealing income or assets from the IRS.

Franklin relies on United States v. Minarik, which held that the government must proceed under the more specific clause of § 371 if it applies.[9]  Minarik, however, has since been limited:  it now applies only when the taxpayer's duties are technical, the violation was too isolated to comprise a "conspiracy to defraud," and the defendant receives no specific notice of the crimes charged.[10]  Here, the conduct was not a mere technical violation of the tax code, the allegations went beyond a single incident of violation, and the indictment, which exhaustively set forth the government's allegations, gave specific notice of the crimes charged.

Finally, the three defendants seek a motion for new trial based on Haggard's post-trial attempts to withdraw her plea.[11] Haggard told several individuals that she believed she was not

---

[9]875 F.2d 1186, 1193-94 (6th Cir. 1989).

[10]See United States v. Khalife, 106 F.3d 1300, 1304-06 (6th Cir. 1997).  Other courts also follow this rule.  See United States v. Goulding, 26 F.3d 656, 663 (7th Cir. 1994); United States v. Notch, 939 F.2d 895, 901 (10th Cir. 1991).

[11]The defendants concede that their Singleton argument regarding Haggard's testimony is foreclosed by United States v. Webster, 162 F.3d 308 (5th Cir. 1998).

6

guilty of conspiracy to defraud the IRS but had been pressured into pleading to avoid a more severe penalty regarding the Medicaid fraud. Because Haggard has never denied the truthfulness of her testimony regarding the three other defendants, however, her assertion of her own innocence is immaterial to the other three convictions. The denial of a new trial was not an abuse of discretion.

III

Franklin and Annette each challenge the sufficiency of the evidence to support the jury verdicts. To establish a conspiracy under 18 U.S.C. § 371, the government must prove (1) an agreement (2) to commit a crime and (3) an overt act committed by one of the conspirators in furtherance of the agreement.[12] A conviction under I.R.C. § 7201 requires a showing of willfulness, a tax deficiency, and an affirmative act constituting evasion.[13]

There was sufficient evidence to support Franklin's and Annette's convictions. Key evidence included Haggard's testimony regarding the delivery of the cash. While Annette's purchase of the home could have been bona fide, even if she accepted money from Franklin for the house, the manner of payment, including the bag of cash and Franklin's comments, gave rise to an inference of illegal activity. In addition, Annette's claims that she wanted the house to be hers alone are contradicted by Franklin's funding of the down

_____

[12]See United States v. Gray, 96 F.3d 769, 772-73 (5th Cir. 1996).

[13]See Sansone, 380 U.S. at 351.

7

payment. The jury could reasonably have inferred from this account that Franklin and Annette conspired to hide assets from the IRS, and that Franklin thus attempted to evade the payment of his tax deficiency.

IV

Barger challenges the sufficiency of the evidence against him, as well as his sentence. He argues that there is insufficient evidence of his involvement in the conspiracy because his assistance with the purchase of the home was innocent. Barger further argues that there was insufficient evidence regarding his false statement conviction. To establish a violation of 18 U.S.C. § 1001(a)(3), the government must show a statement that is false and material and made knowingly and willfully.[14]

We find support for both counts of Barger's conviction. On the amended Offer in Compromise form, he omitted any reference to Franklin's possible ownership interest in the home and stated that the Wrights were renting their residence because they could not make house payments. Barger's involvement with the home purchase was sufficient to infer that he knew that some of the down payment might be Franklin's funds, thus requiring him to list the home as potential community property, and that he knew that the Wrights were able to make payments on a house. His involvement also provides sufficient evidence to support the conspiracy conviction.

---

[14]See United States v. Puente, 982 F.2d 156, 158 (5th Cir. 1993).

8

His reproach to Haggard after she had deposited the money indicated his intimate knowledge with the details of the transaction.

Barger raises two challenges to his sentence. He argues that the district court clearly erred in applying a two-level enhancement for the use of a special skill and that it erred in failing to recognize that it could shorten Barger's sentence based on sentencing disparities.

The district court found that Barger's special skills as a Certified Public Accountant and tax attorney were essential to the evasion scheme. While Barger's contribution to the scheme was not particularly sophisticated, part of it did involve his preparation of the Offer in Compromise and other legal documents. Because this use of special skills did further the conspiracy, it was not clearly erroneous for the district court to apply the enhancement.

Barger argues for a downward departure based on the sentencing disparity between Franklin, the taxpayer, and Barger, who played a much more peripheral role and did not profit from the crime.[15] In Koon v. United States, the Supreme Court held that departure factors should normally not be ruled out on a categorical basis and that courts may depart if the case is outside the Guidelines' heartland.[16] After the Seventh Circuit categorically denied departures based on discrepancies among co-defendants' sentences,

---

[15]Franklin will serve his time in a halfway house. With an 18-month sentence, Barger is ineligible for the halfway program.

[16]See 116 S. Ct. 2035, 2051 (1996).

9

the Supreme Court remanded the case for reconsideration in light of Koon.[17]

This court may review a district court's refusal to grant a downward departure only if the district court mistakenly concluded that the Guidelines did not permit the departure.[18] From our review of the sentencing transcript, it is evident that the district court was troubled by the discrepancy in sentences between Franklin and Barger. The district court concluded, "I still don't like how [Barger] can be assessed more time. And I'm already giving him time for the attorney role, but I find no – I don't have a basis here to depart, though." Although this candid comment was doubtless not intended to be a full explication of the court's rationale, the court appears to have believed that the discrepancy could not be a basis for a downward departure. We remand to the district court for re-sentencing.

We find no legal grounds warranting reversal of any of the convictions: Franklin had a tax deficiency for purposes of I.R.C. § 7201; the indictment was proper; and Haggard's recantation is not material to any of the defendants' convictions. There was sufficient evidence to convict the Wrights and Barger of conspiracy to defraud, Franklin of evasion, and Barger of making false statements. The district court did not clearly err in applying the special skill enhancement to Barger's sentence. As it appears that

_____

[17]See United States v. Meza, 127 F.3d 545, 547-48 (7th Cir. 1997).

[18]See United States v. Palmer, 122 F.3d 215, 222 (5th Cir. 1997).

10

the district court believed that the Sentencing Guidelines did not permit a downward departure based on discrepancies in sentences among co-defendants, we REMAND for the re-sentencing of Barger.

AFFIRMED AS TO FRANKLIN WRIGHT AND ANNETTE WRIGHT; REMANDED FOR THE RE-SENTENCING OF ROBERT BARGER.