UNITED STATES of America,

v.

Archibald R. SCHAFFER III, Defendant.

No. CR.A. 96–0314(JR).

United States District Court, District of Columbia.

Oct. 5, 2000.

Joseph P. Guichet, Office of Independent Counsel, Alexandria, VA, for U.S.

William H. Jeffress, Jr., Miller, Cassidy, Larroca & Lewin, LLP, Washington, DC, Woodson W. Bassett III, Bassett Law Firm, Fayetteville, AK, for defendant.

### SENTENCING OPINION

ROBERTSON, District Judge.

Archibald Schaffer was convicted on June 26, 1998 of one count of violating the Meat Inspection Act, 21 U.S.C. § 622. On September 25, 2000, he was sentenced to serve one year and one day in prison and to pay a fine of $5000. This opinion, filed with the Judgment, sets forth the reasons for the sentence.

The facts of the case are recited in four published opinions and will not be re-

peated here unnecessarily. *See United States v. Schaffer*, 214 F.3d 1359 (D.C.Cir. 2000) (*"Schaffer II"*); *United States v. Schaffer*, 183 F.3d 833 (D.C.Cir.1999) (*"Schaffer I"*); *United States v. Williams*, 29 F.Supp.2d 1 (D.D.C.1998); *United States v. Williams*, 7 F.Supp.2d 40 (D.D.C. 1998).

### 1. *The Guidelines Calculation*

#### a. *Base offense level*

■ Appendix A of the Sentencing Guidelines Manual lists the guideline that is "ordinarily applicable to the statute. of conviction." U.S.S.G., App. A. "[I]n an atypical case," however, "the guideline section indicated for the statute of conviction [might be] inappropriate because of the particular conduct involved." *Id.* In such a case, the sentencing court should "use the guideline section most applicable to the nature of the offense conduct in the count of which the defendant was convicted." *Id.*

Appendix A matches 21 U.S.C. § 622, the statute of conviction in this case, with U.S.S.G. § 2C1.1, the guideline for bribery and extortion. This is clearly not a case of bribery or extortion, however. The Independent Counsel neither charged nor proved any quid pro quo. The majority of offenses described in the Act may fall under the rubric of bribery, but the conduct charged and proved in this case is more akin to a gratuity. (Indeed, the Court of Appeals has acknowledged that the Meat Inspection Act "contains a *less* rigorous intent requirement than the federal gratuity statute." *Schaffer I*, 183 F.3d at 847 (emphasis added); *see id.* at 846 n. 16). I find that the Guidelines section most applicable to Mr. Schaffer's offense conduct is § 2C1.2, which governs the offering, giving, soliciting, or receiving of a gratuity. The base offense level for § 2C1.2 is seven.

#### b. *Specific offense characteristics*

■ The parties agree that, ·under § 2C1.2, an eight-level enhancement ap-

plies if the "gratuity was given … to an elected official or any official holding a high-level decision-making or sensitive position." U.S.S.G. § 2C1.2. The jury found that the gratuity in this case was meant to influence A. Michael Espy, the then-Secretary of Agriculture, who unquestionably held a high-level decisionmaking position. Thus, I find that the eight-level enhancement applies pursuant to § 2C1.2(b)(2)(B).

#### c. *Role in the offense*

■ The Independent Counsel argues that Mr. Schaffer played the role of an organizer, leader, manager, or supervisor in the offense, so that a two-level enhancement is appropriate under § 3B1.1(c). Mr. Schaffer contends that he was only a minimal participant in the offense, and that § 3B1.2(a) therefore requires a four-level deduction.

Application note 3 to § 3B1.3 defines a "minor participant" as one who is "less culpable than most other participants, but whose role could not be described as minimal." In my judgment, Mr. Schaffer's role fits that formulation exactly. The Meat Inspection Act violation involved the gratuitous provision of travel, lodging, and amenities in connection with John Tyson's birthday party. Mr. Schaffer did not extend the invitation, plan the party, or directly furnish any part of the gratuity. The only act he performed that furthered the giving of the gratuity was contacting the Department of Agriculture and making the travel arrangements.

The jury may have believed that Secretary Espy's speech to the APF was a sham and that Mr. Schaffer's handling of the APF invitation to Russellville was probative of a guilty intent in making the travel arrangements. Mr. Schaffer's acts with regard to the APF event, however, offended no law. Evidence of those acts was relevant to prove Mr. Schaffer's *intent* to violate the Meat Inspection Act. The acts that comprised the actual offense involved more than one culpable participant—a cor-

poration that paid a fine and other officials of Tyson Foods who were given immunity. Mr. Schaffer's culpability was relatively minor compared with that of the others. *See United States v. Edwards,* 98 F.3d 1364, 1370 (D.C.Cir.1996); *United States v. Caballero,* 936 F.2d 1292, 1299 (D.C.Cir. 1991).

The Fourth Circuit's test for evaluating a role in the offense adjustment, *see United States v. Palinkas,* 938 F.2d 456, 460 (4th Cir.1991), *vacated on other grounds,* 503 U.S. 931, 112 S.Ct. 1464, 117 L.Ed.2d 610 (1992), is instructive: one cannot call Mr. Schaffer's ministerial role in arranging air transportation immaterial (*i.e.,* minimal), but it certainly was not *essential.* "Facilitator" is a more suitable description of Mr. Schaffer's role in the offense conduct. *Cf. Edwards,* 98 F.3d at 1370. It was a minor role, and two points will be deducted pursuant to § 3B1.2(b).

### d. *Obstruction of justice*

█ The Independent Counsel argues for a two-level enhancement for obstruction of justice pursuant to § 3C1.1. The premise of the argument is that Mr. Schaffer obstructed justice by lying to FBI Agents who questioned him about details relating to the Russellville party. Agent Moutz testified about his "discussions" with Mr. Schaffer. He said that Mr. Schaffer said he did not know who made the arrangements for Secretary Espy to stay at the Tyson Management Development Center. There is no evidence in the record, however, to prove who did make those particular arrangements or that Mr. Schaffer knew who made them. Agent Moutz also said that Mr. Schaffer "did not know who made the arrangement for Secretary Espy to attend the birthday party."

It is not too fine a point to note that Agent Moutz's testimony does not establish what Mr. Schaffer actually said about arrangements for Secretary Espy's attend-

ance at the party. Such precision would of course have been necessary to prove a violation of 18 U.S.C. § 1001 (making false statements to a government agent). Section § 1001 was definitely implicated in this case—the Independent Counsel charged Mr. Schaffer's codefendant with two counts of violating § 1001—but Mr. Schaffer was not charged with that offense, and the record would not have supported his conviction under § 1001.

Even if a preponderance of the evidence[1] were to support a finding that Mr. Schaffer concealed or falsely denied his knowledge of the arrangements for Secretary Espy's attendance at the party, the record does not come close to establishing that Mr. Schaffer's statements to Agent Moutz "significantly obstructed or impeded the official investigation or prosecution of the instant offense." U.S.S.G. § 3C1.1, comment. (n. 4(g)). The Independent Counsel, challenged by Mr. Schaffer to demonstrate how his denials of knowledge actually impeded the investigation, *see United States v. Alpert,* 28 F.3d 1104, 1107–08 (11th Cir.1994)(en banc) (obstruction enhancement requires specific finding as to how defendant's conduct obstructed investigation), submitted two memoranda of FBI interviews with other witnesses. The interview memoranda were offered to prove that neither of the other two witnesses gave "information about communications with ... the USDA regarding Espy's ... travel to Russellville" or "any insight as to the covert nature of the arrangements to get Espy to Russellville," Resp. to Def.'s Sentencing Submission, p. 12. The memoranda do not reveal what the agents already knew or did not know when they conducted the interview, however, nor do they reveal what questions the agents asked.[2] They are not probative of the proposition advanced by the Independent Counsel, that Mr. Schaffer's "concealment of this information from the FBI ...

---

1. Or clear and convincing evidence-it is unnecessary to decide which.

2. The memoranda have been redacted to obscure the interviewing agent's identity.

substantially impeded its investigation."
*Id.*

E. *Total offense level*

The defendant's base offense level (7) plus the specific offense characteristic enhancement (8) yields an adjusted offense level of 15. Because of Mr. Schaffer's minor role in the offense, this score is decreased (–2). The total offense level is 13.

F. *Downward departure*

Mr. Schaffer invokes the discretion of a sentencing judge to depart from the Guidelines in a case that falls outside the heartland of typical cases, *see Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996), and he identifies a number of factors that, in his submission, take this case out of the heartland of gratuity cases.

█ Contrary to defendant's submission, I believe I lack the authority to depart on any of the following proffered grounds: (1) it is atypical for the prosecution to bring a gratuity charge for the provision of hospitality in the lobbying context; (2) defendant had no clear notice that the offense conduct was unlawful; (3) there is a hazy line between criminal conduct and constitutionally protected conduct in this case; (4) there was no clear authority that the Secretary of Agriculture was covered by the Meat Inspection Act; (5) there was insubstantial evidence of guilt; or (6) defendant's conduct was aberrant. These factors were either in some way considered by the Sentencing Commission, must be deemed to have been considered, have been rejected by controlling legal authority, or are not present to such an unusual or extraordinary degree as to justify a departure. *See Koon,* 518 U.S. at 98–99, 116 S.Ct. 2035. Two other factors, however, warrant consideration.

*No personal gain*

█ There is no evidence in the record that defendant reaped any personal benefit from this offense or that his employer rewarded him in any way. *See United States v. Wright,* 211 F.3d 233, 238–39 (5th Cir.2000) (remanding for consideration of departure for defendant who "played a . . . peripheral role and did not profit from the crime"); *United States v. Walters,* 87 F.3d 663, 671–72 (5th Cir.1996) (upholding downward departure because of defendant's lack of personal gain); *see also United States v. Broderson,* 67 F.3d 452, 459 (2d Cir.1995); *cf. United States v. Garrison,* 133 F.3d 831, 853 (11th Cir.1998) (affirming upward departure because fraud was undertaken for defendant's personal gain). *Walters* involved money laundering, and the Fifth Circuit (per Judge Jolly) thought it important that the guideline for money laundering makes no mention of failure to receive a personal benefit as a mitigating factor, *see* 87 F.3d at 671–72. *Broderson* involved government contract fraud. The Second Circuit (per Judge Winter, in a pre-*Koon* opinion) observed that the lack of personal profit is not ordinarily a ground for departure because the Commission generally took that factor into account, but deferred to the district court's reasoning that defendant did not set out to mislead the government and that the fraud "was not mainstream fraud. . . . Indeed, it was fraud only because of [applicable statutes]." *Broderson,* 67 F.3d at 459.

█ As with money laundering, the Guideline for offering or giving a gratuity makes no mention of failure to receive a personal benefit. It does contemplate that a gratuity may be offered or given by a private citizen whose only intent is "to ingratiate himself or his business with the public official," § 2C1.2, comment. (n. 3), presumably without any immediate hope of financial reward. That application note, however, was written before, and has not been amended since, the Supreme Court's rejection of the proposition that a gratuity

case may be made of "an effort to buy favor or generalized goodwill" and its holding that the government "must prove a link between a thing of value conferred upon a public official and a specific 'official act' for or because of which it was given." *United States v. Sun–Diamond Growers of Ca.,* 526 U.S. 398, 403, 414, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999). No such proof was adduced in this case. At most, the Independent Counsel proved that Mr. Schaffer: (i) aided and abetted (ii) the provision of a gratuity by Tyson Foods to the Secretary of Agriculture (iii) who was then "in a position to influence the trajectory" of specific policies of concern to Tyson Foods. See *Schaffer I,* 183 F.3d at 850. Mr. Schaffer neither gave *nor* received anything in the course of this offense. While it is certainly true that a person who is "only" an aider and abetter is as guilty as his principal (in this case, Tyson Foods and its immunized executives), it does not follow that he is as culpable for sentencing purposes. I find that what Mr. Schaffer did was not a mainstream gratuity violation.

*Extraordinary community service*

 The file of this case contains nearly 100 letters from public officials (from both major parties), academics, and civic and community leaders, all attesting to Mr. Schaffer's extensive involvement in service aimed at the betterment of his community. On the basis of these letters, which are not challenged in any way by the Independent Counsel, I find that defendant's record of community service is truly exemplary. I find, moreover, that he is likely to continue that service in the future and that the community would be better served by such continued service than by Mr. Schaffer's imprisonment. Although a defendant's personal history and community involvement are not ordinarily relevant in determining whether a sentence should be outside the guideline range, I find that defendant's service in the community has indeed been truly extraordinary to a degree that takes this case outside the heart-

land. *See United States v. Crouse,* 145 F.3d 786, 790 (6th Cir.1998) (upholding departure for defendant's civic involvement and charitable works).

❋ ❋ ❋ ❋ ❋ ❋

In my judgment these two factors individually, and in concert with each other, take this case "outside the heartland" of usual cases under the Guidelines. Were I free to do so, I would depart to Level 8, which in light of defendant's criminal history score of I, would yield a sentencing range of 0–6 months. Within that range, a sentence of probation would be permissible. Together with a fine of $10,000 pursuant to 5E1.2(c)(3), a term of probation would represent a just and fair punishment for Mr. Schaffer's offense.

2. *The Meat Inspection Act*

 Any person convicted an offense under the Meat Inspection Act is to be "punished by a fine not less than $5,000 nor more than $10,000 and by imprisonment not less than one year nor more than three years." 21 U.S.C. § 622. Mr. Schaffer submits that, for eighty years following the enactment of the Meat Inspection Act in 1907, judges routinely suspended all or part of sentences imposed under it. He argues that Congress understood in 1907 that sentences were subject to suspension, and, he states, in fact "the Act has never been applied to require that the defendant actually serve a year in prison or indeed, serve any time in prison at all." He concludes that Congress did not intend, and that the Act does not require, that an offender actually serve a one-year sentence.

Mr. Schaffer cites no case for the proposition that a sentence of less than one year may be imposed under the Meat Inspection Act. There is precedent for supporting the suspension of Meat Inspection Act sentences and for early parole, but the Sentencing Reform Act of 1984 removed the power of federal judges to suspend sentences and abolished parole. The Guide-

lines now expressly require that any sentence imposed under the Guidelines be "not less than any statutorily required minimum sentence." U.S.S.G. § 5G1.1.

The only exceptions to § 5G1.1 are the "safety valve" for persons convicted of drug offenses, *see* U.S.S.G. § 5C1.2, and the government-sponsored departures available for those who provide "substantial assistance" in the investigation and prosecution of others, *see* U.S.S.G. § 5K1.1, comment.(n. 1). Thus, drug dealers, informants, and cooperating witnesses may be given departures below statutory minimums, but Mr. Schaffer—who realized no personal gain from his offense and has been an extraordinarily good citizen—may not. This anomalous result betrays a likely oversight on the part of Congress when it enacted the Sentencing Reform Act. If Mr. Schaffer's situation is an unintended consequence of that oversight, however, it is Congress that must fix the problem. I cannot.