**UNITED STATES of America,**
**Appellee/Cross–Appellant,**

v.

**Howard BRODERSON, Defendant–**
**Appellant/Cross–Appellee.**

Nos. 1522, 1903, Dockets
94–1586(L), 94–1638.

United States Court of Appeals,
Second Circuit.

Argued June 13, 1995.

Decided Sept. 29, 1995.

As Modified Oct. 23, 1995.

Candace Reid, New York City (Lawrence S. Goldman, Goldman & Hafetz, of counsel), for Defendant–Appellant/Cross–Appellee.

Scott W. Mackay, Washington, DC (Deborah A. Kent, United States Department of Justice, Defense Procurement Fraud Unit, of counsel), for Appellee/Cross–Appellant.

Before: OAKES, WINTER and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

Howard Broderson appeals from the sentence imposed by Judge Mishler after a jury convicted Broderson of twenty-two counts involving fraudulent conduct directed at the United States government. Broderson challenges: (i) the enhancement of his offense level by two levels based on a determination that he had abused a "position of trust" with the victim of the fraud, *see* U.S.S.G. § 3B1.3; (ii) the use of the 1993 Guidelines Manual

instead of the 1988 Manual in determining his sentence; and (iii) the enhancement of his offense level by twelve levels based on a finding that the "intended loss" to the victim was $2.1 million, *see* U.S.S.G. § 2F1.1(b)(1)(M). The government cross-appeals, contending that the district court erred when it departed downward by seven levels under U.S.S.G. §§ 2F1.1, comment. (n. 7(b)), 5K2.0. We hold that Broderson's conduct was not an abuse of a position of public trust under U.S.S.G. § 3B1.3. We disagree with the district court's calculation of the intended loss. We agree that the grounds relied upon by the district court as a basis for a downward departure were proper. We therefore remand for resentencing.

## BACKGROUND

In the summer of 1989, Grumman Data Systems Corporation and the National Aeronautics and Space Administration ("NASA") negotiated a contract under which Grumman agreed to provide supercomputer hardware, software, and related integration and maintenance services to the Lyndon B. Johnson Space Center in Houston, Texas. Broderson, a vice president of the Business Operations Division of Grumman, negotiated the contract on behalf of Grumman and was responsible for preparing and submitting Grumman's proposals to NASA. The contract negotiations were governed by the Truth in Negotiations Act ("TINA"), 10 U.S.C. § 2306a, and TINA's implementing regulations in the Federal Acquisition Regulations ("FAR"), 48 C.F.R. §§ 15.801–15.804. TINA and FAR required Broderson to disclose to NASA (and to update) all "cost or pricing data" until an agreement was reached by NASA and Grumman. 10 U.S.C. § 2306a; 48 C.F.R. § 15.801.

Under the contract, Grumman was to purchase supercomputer hardware and lease it to NASA under a "lease-to-ownership-plan" ("LTOP"). Under the LTOP, NASA was to make 57 or 58 monthly payments to Grumman, the total cost not to exceed $48 million. Broderson arranged to finance Grumman's

purchase of the supercomputer hardware through a third-party financing company, Old Stone Leasing Corporation. Old Stone initially offered Broderson an interest rate of 13.77 percent, which he disclosed to NASA. Approximately three weeks later, Old Stone reduced the requested interest rate to 10.5 percent. Broderson failed to inform NASA of the lower interest rate. Broderson signed and caused to be submitted to NASA two Certificates of Current Cost or Pricing Data, which falsely stated that to the best of Broderson's knowledge and belief, Grumman's cost or pricing data were accurate, complete, and current. The final contract between Grumman and NASA provided for a 57–month stream of lease payments at the 13.77 percent interest rate. However, Grumman thereafter sold the lease stream to Old Stone, valuing it at the 10.5 percent interest rate.

A jury convicted Broderson of eleven counts of executing a major fraud scheme in connection with the defective pricing of a government contract valued at more than $1 million, in violation of 18 U.S.C. §§ 1031, 2; nine counts of wire fraud, in violation of 18 U.S.C. §§ 1343, 2; and two counts of making false statements to the United States, in violation of 18 U.S.C. §§ 1001, 2. Broderson does not appeal from the conviction.

At sentencing, the district court assigned Broderson a base offense level of six under U.S.S.G. § 2F1.1(a). Judge Mishler then enhanced the offense level by twelve levels based on an intended loss of $2.1 million under U.S.S.G. § 2F1.1(b)(1)(M); two levels for abuse of a position of public trust under U.S.S.G. § 3B1.3; and two levels for more than minimal planning under U.S.S.G. § 2F1.1(b)(2)(A). Judge Mishler then departed downward by seven levels based on his findings that the determination under Section 2F1.1 significantly overstated the seriousness of Broderson's conduct, and that there were mitigating circumstances of a kind or degree not adequately taken into consideration in the Guidelines, see U.S.S.G. § 5K2.0. In support of these findings, Judge Mishler noted that: (i) Broderson had sought only to benefit his employer, Grumman, and had received no personal benefit from the fraud; (ii) under existing market conditions, the contract was favorable to the government; and (iii) the government received restitution from Grumman.

Based on a criminal history category of I and offense level of 15, the district court set Broderson's sentencing range at 18 to 24 months. Absent the downward departure, Broderson's guideline range would have been 41 to 51 months. Judge Mishler sentenced Broderson to 18 months imprisonment to be followed by three years of supervised release, and imposed a $1,100 mandatory special assessment.

This appeal and cross-appeal followed.

## DISCUSSION

### A. *Abuse of a Position of Trust*

■ The district court's determination that Broderson occupied and abused a position of trust is a legal question that we review *de novo*. *United States v. Castagnet,* 936 F.2d 57, 58–59 (2d Cir.1991). U.S.S.G. § 3B1.3 provides, in relevant part:

> If the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic.

We agree with Broderson that he did not occupy a position of trust vis-a-vis the government. TINA and FAR imposed specific legal obligations on Broderson that he failed to fulfill. But for those provisions, Broderson would not have been under any duty to inform the government of Grumman's anticipated costs or to certify that such information had been accurately provided.

The government's theory seems so far reaching that it might cause virtually anyone who is commanded by statute to make an accurate report to the government to be subject to a Section 3B1.3 enhancement. All taxpayers who file false tax returns, for example, might be included. We believe that it is fairly obvious that the Sentencing Commission harbored no intent that the enhancement be so sweeping.

Quoting from the Commentary to Section 3B1.3, the government argues that anyone with "professional or managerial discre-

tion"—which Broderson had as a high executive at Grumman—occupies a position of public or private trust. *See* U.S.S.G. § 3B1.3, comment. (n. 1). However, the cases relied upon by the government indicate that the discretion must be entrusted to the defendant by the victim. *See United States `v. Viola,* 35 F.3d 37, 45 (2d Cir.1994) (declining to apply Section 3B1.3 to a forklift operator who abused his position as an employee by viewing documents and disclosing their contents), *cert. denied,* —— U.S. ——, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *Castagnet,* 936 F.2d at 51 (applying Section 3B1.3 to a Piedmont airline employee who traded Piedmont tickets for cash or other airline tickets). Moreover, every example of an abuse of trust in the Commentary accompanying Section 3B1.3 also involves a victim entrusting an agent or employee with discretion. U.S.S.G. § 3B1.3 comment. (n.1) (examples of abuse of a position of trust are an attorney embezzling a client's money, a bank executive executing a fraudulent loan scheme, and a physician sexually abusing a patient during an examination).

Broderson was a high-ranking executive at Grumman and therefore had managerial discretion to negotiate for that company. Had he accepted a bribe from another party to give that party better terms than were necessary, that would have abused his position of trust. In contrast, NASA entrusted Broderson with no discretion whatsoever and whatever "trust" NASA placed in Broderson was based strictly on the explicit commands of TINA and FAR.

■ The government's position is wrong for a second reason. Section 3B1.3 does not apply if the abuse of trust is already "included in the base offense level or specific offense characteristic." U.S.S.G. § 3B1.3. The conduct that is the basis of the conviction must be independently criminal, as in the Commentary's examples noted above, and not itself the abuse of trust. Broderson's fraudulent conduct was signing the certificate stating that Grumman had complied with TINA and FAR. Any abuse of trust was therefore "included in the base offense level" of six for fraud and deceit. *See* U.S.S.G. § 2F1.1(a).

*B. Use of the 1993 Guidelines Manual*

Broderson contends that the district court erred in using the 1993 Guidelines Manual to compute his sentence. He argues that the district court should have used the 1988 Guidelines Manual instead because that manual was in effect at the time of all the acts committed personally by Broderson. The version of the Guidelines' fraud loss table that was in effect prior to November 1, 1989 provided for only a ten-level enhancement for an intended loss amount of $2.1 million. U.S.S.G. § 2F1.1(b)(1)(K) (1988). Since November 1, 1989, U.S.S.G. § 2F1.1(b)(1)(M) has provided for a twelve-level enhancement for a loss of that amount.

■ A sentencing court generally is required to apply the Guidelines Manual in effect at the time of sentencing. 18 U.S.C. § 3553(a)(4). Broderson was sentenced on October 7, 1994, when the 1993 Guidelines were controlling. However, where application of the Guidelines in effect at sentencing would result in a more severe sentence than the version in effect at the time of the commission of the offense, the *Ex Post Facto* Clause of Article I of the Constitution requires use of the earlier version of the Guidelines. *See United States v. Rivers,* 50 F.3d 1126, 1129 (2d Cir.1995); *United States v. Rodriguez,* 989 F.2d 583, 587 (2d Cir.1993).

The last date of the offense, as alleged in the indictment, is the controlling date for *ex post facto* purposes. U.S.S.G. § 1B1.11, comment. (n. 2); *United States v. Gigante,* 39 F.3d 42, 50 (2d Cir.1994). In Count 20 of the indictment, Broderson was charged with causing $258,292 to be transmitted interstate by means of a wire communication on October 1, 1990. The 1989 Guidelines in effect on that date contained the same provision for a twelve-level enhancement as the 1993 Guidelines used by the district court. *See* U.S.S.G. § 2F1.1(b)(1)(M) (1989). Since the 1993 Guidelines are not more severe in this respect than the 1989 Guidelines, the district court properly applied the 1993 Guidelines in this case.

■ Broderson's argument that we should treat this as an *ex post facto* case because the government could have charged

him with one count of major fraud against the United States on the execution date of the contract—August 25, 1989—is not persuasive. He admits to making no claim that the government's motivation in charging eleven counts of major fraud and nine separate counts of wire fraud was to manipulate the sentence. Absent an allegation of prosecutorial misconduct, we must defer to the prosecutorial decisions as to whether to prosecute and what charges to file. *United States v. Stanley,* 928 F.2d 575, 580 (2d Cir.) (prosecutor has broad discretion to forego or to bring a charge on which a defendant could be legitimately prosecuted, convicted and sentenced), *cert. denied,* 502 U.S. 845, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991).

## C. *Amount of Intended Loss*

■ Broderson claims that the district court erred in its determination that the fraud's intended loss was approximately $2.1 million. The district court arrived at that figure by totaling the 57 monthly payments in the original contract, which were calculated at an interest rate of 13.77 percent, from which total the court then subtracted the sum of a revised stream of payments calculated at a 10.5 percent rate. Broderson contends that the district court should have used the present value rather than the total payments of the two lease streams, which yields an intended loss figure of approximately $1.7 million. We agree with Broderson's analysis.

Given our holding that the 1993 Guidelines were properly applied in this case, the district court's miscalculation had no effect on Broderson's offense level. Under the fraud loss table of the 1993 Guidelines, both the $2.1 million figure and the $1.7 million figure thus correspond to a twelve-level enhancement. U.S.S.G. § 2F1.1(b)(1)(M) (1993). Nevertheless, we address the issue. We must remand for resentencing because of our reversal of the Section 3B1.1 enhancement, and the district court may then want to reconsider the appropriateness, or extent, of the downward departure. Because the amount of the intended loss is relevant to the exercise of the district court's discretion with regard to the departure even if it does not affect Broderson's offense level, we believe that we should determine that amount.

The sum of the payments in a lease stream does not accurately represent the value of that lease stream because it fails to account for the time value of money. For example, under the district court's methodology, a payment stream consisting of a $1,000 payment in 1995 and $1,000 payment in 1996 would be treated as having the same value as a payment stream of $1,000 in 1995 and $1,000 in 2096, namely, $2,000. Clearly, however, the value of $1,000 in 1996 is greater than the value of $1,000 in 2096. To determine a lease stream's value accurately, it is necessary to calculate the present value of the stream of income under the contract that would presumably have been signed absent the TINA and FAR violations and the stream under the contract as signed. The present value of the anticipated stream of income absent the fraud should then be subtracted from the present value of the original stream.

The government erroneously argues that taking the present value of the intended overpayments ignores the fact that Broderson's scheme contemplated that NASA would make inflated LTOP payments over the entire 57-month term of the contract. In making this argument, the government fails to recognize that receiving the present value of a stream of payments is precisely equivalent to receiving the individual payments at the scheduled times in the future. In fact, it is the government's calculation that ignores that the overpayments were to occur over the 57-month term of the contract.

## D. *The Downward Departure*

In its cross-appeal, the government contends that the district court erred in granting a downward departure based on its determination that there existed mitigating circumstances not taken into account by the Guidelines, *see* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0, and that the loss calculation overstated the seriousness of Broderson's offense, *see* U.S.S.G. § 2F1.1 comment. (n. 7(b)). The downward departure was based on the district court's findings that: (i) Broderson did not personally profit from the

fraud; (ii) the contract was favorable to the government under existing market conditions; and (iii) the government received restitution from Broderson's employer. The government contends that these facts were not permissible grounds for downward departure.

■ We review *de novo* a district court's ruling that a particular factor is a permissible ground for departure under Section 5K2.0. *United States v. Williams,* 37 F.3d 82, 85 (2d Cir.1994). We review for clear error the district court's factual findings as to the existence of that factor. *Id.* If there is no clear error in the district court's factual findings and no error in its conclusion that the factor is a permissible ground for departure, we review the resulting sentence for reasonableness. *Id.*

In determining whether a factor may permissibly be taken into account for purposes of a Section 5K2.0 departure, we note that Section 5K2.0 provides that a sentencing court may depart

even though the reason for departure is taken into consideration in the guidelines ... if the court determines that, in light of unusual circumstances, the guideline level attached to that factor is inadequate.

Where, for example, the applicable offense guideline and adjustments do take into consideration a factor listed in this subpart, departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense.

Moreover, the introduction to the Guidelines states:

The sentencing statute permits a court to depart from a guideline-specified sentence only when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. Section 5H1.10 (Race, Sex, National Origin, Creed, Religion, and Socio-Economic Status), § 5H1.12 (Lack of Guidance as a Youth and Similar Circumstances), the third sentence of § 5H1.4 (Physical Condition, Including Drug Dependence and Alcohol Abuse), and the last sentence of § 5K2.12 (Coercion and Duress) list several factors that the court cannot take into account as grounds for departure. With those specific exceptions, however, the Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case.

Clearly, the departure in this case can be justified only if the circumstances are such that it falls outside the "heartland" of fraud cases. In addressing that issue, we adopt then-Chief Judge Breyer's analysis in *United States v. Rivera,* 994 F.2d 942 (1st Cir.1993). *Rivera* distinguishes between: (i) "encouraged departures," *id.* at 948, where the Guidelines specifically list factors to be considered for departure purposes; (ii) "discouraged departures," where the factors in question were taken into account by the Commission but may be present in such an "unusual kind or degree" as to take the case out of the "heartland" of the crime in question and to justify a departure, *id., see also United States v. Merritt,* 988 F.2d 1298, 1308–09 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2933, 124 L.Ed.2d 683 (1993); and (iii) "forbidden factors," where the factors in question can never justify a departure, *Rivera,* 994 F.2d at 949.

■ The departure in the present case can be justified, if at all, only as a "discouraged departure." Ordinarily, payment of restitution is not an appropriate basis for downward departure under Section 5K2.0 because it is adequately taken into account by Guidelines Section 3E1.1, dealing with acceptance of responsibility. *United States v. Ar-*

*joon,* 964 F.2d 167, 171 (2d Cir.1992). Nor is lack of personal profit ordinarily a ground for departure, because the Commission generally took that factor into account in drafting the Guidelines. *See United States v. Seacott,* 15 F.3d 1380, 1387 (7th Cir.1994). Moreover, until detected, Broderson's crime could have improved his position or salary within Grumman. Finally, the fact that the contract was favorable to NASA given existing market conditions arguably does not mitigate Broderson's failure to observe his TINA and FAR obligations.

■ Nevertheless, we also recognize the district court's "better 'feel' for the unique circumstances of the particular case before it," *Rivera,* 994 F.2d at 951, and "special competence" in determining whether that case falls within the "heartland." *Id.* Based on that recognition, we conclude that the district court could permissibly depart in the present case.

Reading the sentencing colloquy as a whole, we understand Judge Mishler to have reasoned as follows. Although Broderson was charged and sentenced for fraud, his criminal intent was significantly different from that of the typical fraud defendant. He did not set out to mislead the government. Had he done so, he could have credibly represented to NASA that Grumman's financing was at an interest rate substantially greater than $13.77%. When he was able to negotiate with the financing company a lower rate, he failed to inform the government partly because he believed Grumman to be in financial trouble and partly because he believed the new rate to be the product of his efforts rather than the government's. He was not to receive the $1.7 million in revenue that went to Grumman. Moreover, the fraud was not mainstream fraud; negotiators usually need not reveal their costs to the other side. Indeed, it was fraud only because of TINA and FAR. Finally, the government recovered $1.1 million in contractual damages and an additional $2.2 million in civil damages. Ultimately, therefore, unlike the typical fraud victim, the government suffered no loss. Judge Mishler concluded that this confluence of circumstances was not taken into account by the Guidelines, *see* U.S.S.G. § 5K2.0, and that the loss calculation of $2.2 million (now recalculated to $1.7 million) overstated the seriousness of Broderson's offense, U.S.S.G. § 2F1.1, comment. (n. 7(b)).[1]

■ Although we regard the case as a close one, we believe that Judge Mishler was within his discretion in downwardly departing and that the departure was reasonable. We agree with *Rivera* that courts of appeals should recognize that they hear relatively few Guidelines cases compared to district courts and that district courts thus have a "special competence" in determining whether a case is outside the "heartland." 994 F.2d at 951. Although we might have reached a contrary decision with regard to whether Broderson's conduct was in the "heartland" of fraud cases and to the seriousness of his offense, we acknowledge that there are grounds on which his violation of TINA and FAR are distinguishable from classic instances of fraud. We thus defer to Judge Mishler's view of the case. Of course, he should now reconsider that departure in light of our

---

1. In *United States v. Minicone,* 26 F.3d 297 (2d Cir.1994), we held that "where independent factors have been adequately considered by the Sentencing Commission and each factor considered individually fails to warrant a downward departure, the sentencing court may not aggregate the factors in an effort to justify a downward departure." *Id.* at 302. In the present case, the aggregate consists of considered factors—e.g., restitution—and unconsidered factors—e.g., nature of the fraud. In any event, the Sentencing Commission has now amended Section 5K2.0's Commentary to make clear that

> [t]he Commission does not foreclose the possibility of an extraordinary case that, because of a combination of such characteristics or circumstances, differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case.

U.S.S.G. App. C, Amendment 508. Amendment 508 went into effect on November 1, 1994, *see id.,* and thus would not ordinarily apply to Broderson, who was sentenced on October 7, 1994, *see* 18 U.S.C. § 3553(a)(4). If viewed as a clarification of Section 5K2.0, we could also rely upon the amendment to support our approach. *See United States v. Hendrickson,* 26 F.3d 321, 330 (2d Cir.1994); *United States v. Colon,* 961 F.2d 41, 45 (2d Cir.1992); *United States v. Capers,* 61 F.3d 1100, 1109 n. 5 (4th Cir.1995) (citing cases).

reversal of the enhancement, the recalculation of the intended loss, and our present discussion of the factors leading to the departure.

We therefore remand for resentencing.