**UNITED STATES of America,**
**Plaintiff,**

v.

**Felix R. MENDOZA–BENITEZ, Edwin**
**Otero–Vazquez, Defendants.**

**No. CRIM. 98–287CCC.**

United States District Court,
D. Puerto Rico.

July 31, 2000.

Guillermo Gil, U.S. Attorney, Desiree Laborde–Sanfiorenzo, Assistant U.S. Attorney, Hato Rey, PR, for Plaintiff.

Luis R. Rivera–Rodriguez, Hato Rey, PR, for Defendants.

## ORDER

CEREZO, District Judge.

On April 3, 2000, the government filed its Objections to the Presentence Investigation Report (PSR) of defendant Félix Mendoza–Benítez (docket entry 97), seeking 1) that the calculation of the amount of loss be based on the adulterated milk delivered to the processing plant's silos, instead of the tankers, 2) that defendant be awarded a four (4) level enhancement under U.S.S.G. § 3B1.1(a) for being an organizer or leader, 3) that defendant be ordered to pay full restitution, and 4) that the fine to be imposed be based on the alternative fines statute, 18 U.S.C. § 3571(d). In a Second Motion Submitting Objections filed on April 4, 2000 (docket entry 98), the government also requested that the PSR be amended to reflect that defendant had been administratively charged for milk adulteration in 1997.

On April 30, 2000, defendant filed his objections to the PSR (docket entry 100), claiming 1) that the amount of loss should be determined based on the net loss to the victim, 2) that no adjustment to defendant's offense level is warranted for the abuse of a position of public trust under U.S.S.G. § 3B1.3, 3) that defendant did not have an aggravating role in the offense as alleged by the government meriting an adjustment under U.S.S.G. § 3B1.2, 4) and expressing his willingness to pay a fine of $5,000.00.

In order to clarify some of the arguments raised by the parties, the Court ordered them to submit additional memoranda (docket entry 105). The government complied (docket entry 106), but not defendant. In any event, we are now in position to resolve the sentencing issues raised.

I. Adjustment for loss under U.S.S.G. § 2F1.1(b)(1).

In previous cases dealing with the same offense at issue here, we have established that the amount of loss must be calculated based on the amount of water added to the milk, multiplied by the cost of a liter of milk to the consumers. We did so after determining that the defendants involved in the acts of adulterating milk never intended to cause a total loss to the processing plant and/or the consumers of the milk adulterated, as they also added salt to the adulterated milk in order to mask the adulteration and to pass off the

milk as Grade A milk. Their intentions proved to be successful since all of the adulterated milk was sold in the market. Thus, the actual loss to the consumers was the actual amount of water added to each liter of milk bought by them, which obviously reduced the amount of Grade A milk that they would otherwise had obtained. As, in this case, the amount of water added to the milk was from 500 to 1,000 liters, and the cost of a liter to the consumers was $0.96 at the time of the commission of the offense, the amount of loss did not exceed $960.00. Accordingly, we find that no adjustment for loss is warranted under U.S.S.G. § 2F1.1(b)(1).

II. Adjustments for role in the offense under U.S.S.G. §§ 3B1.1(a) and 3B1.3.

■ After having reviewed all the evidence of the conspiratorial scheme, the Court FINDS that it is insufficient to establish that the scheme to defraud was "otherwise extensive" as required for an upward adjustment under U.S.S.G. § 3B1.1(a). Except for the two year duration of the conspiracy, neither the specific number of instances in which milk was adulterated nor the relationship among the co-conspirators establish structured activity or a far-reaching complex web of criminal activity which would justify the four (4) levels enhancement for role in the offense under said section.

As to the adjustment for abuse of a position of public trust made under U.S.S.G. § 3B1.3, the PSR states as follows:

> The defendant, as a farm owner, was trained and certified by the pertinent local regulatory agencies as to dairy industry regulations, and thereby abused a position of public trust by personally engaging in the adulteration of milk. In addition to having knowledge that others were committing the same offenses, and did not put a stop to such practices due to the expected financial profit.

PSR, docket entry 99, at p. 8, ¶ 31.

■ Mere training and knowledge of the industry's regulations to which the de-

fendant must abide in the operation of his business do not establish the existence of a position of public or private trust. In *U.S. v. Broderson,* 67 F.3d 452 (2nd Cir.1995), the district court concluded that defendant Broderson, a vice president of a company that had contracted with the National Aeronautics and Space Administration (NASA) to provide, among other things, supercomputer hardware and software, had abused a position of public trust under U.S.S.G. § 3B1.3 upon failing to disclose to NASA during the negotiation of the contract cost and pricing data as required by the Truth in Negotiations Act (TINA), 10 U.S.C. § 2306a, and its implementing regulations. The Court of Appeals, however, reversed the district court's determination, finding that Broderson did not occupy a position of trust vis-a-vis the government. The Court explained:

> TINA and [its regulations] imposed specific legal obligations on Broderson that he failed to fulfill. But for those provisions, Broderson would not have been under any duty to inform the government of [the contractor's] anticipated costs or to certify that such information had been accurately provided.
>
> The government's theory seems so far reaching that it might cause virtually anyone who is commanded by statute to make an accurate report to the government to be subject to a Section 3B1.3 enhancement. All taxpayers who file false tax returns, for example, might be included. We believe that it is fairly obvious that the Sentencing Commission harbored no intent that the enhancement be so sweeping.
>
> . . .
>
> Moreover, every example of an abuse of trust in the Commentary accompanying Section 3B1.3 also involves a victim entrusting an agent or employee with discretion. U.S.S.G. § 3B1.3 comment. (n.1) (examples of abuse of a position of trust are an attorney embezzling a client's money, a bank executive execut-

ing a fraudulent loan scheme, and a physician sexually abusing a patient during an examination).

*Broderson,* 67 F.3d at 455–56.

Certainly, the method of adulteration and the fact that this was undertaken in an isolated place by the farm owner and the milk truck drivers made the offense a difficult one to detect. The truck drivers, however, were as essential to the commission of the offense as was the owner. It was the intimacy of their relationship which allowed them to successfully continue during a period of time with the adulteration activity. However, no trust, public or private, was placed by anyone on the farm owner. He did not hold any position that facilitated the concealment. It was simply his status as a property owner who engaged in criminal activity with a handful of milk truck drivers who chose an effective means of avoiding detection which facilitated the commission and the concealment of the offense.

Accordingly, we also find that no adjustment for abuse of a position of trust is warranted under U.S.S.G. § 3B1.3.

III. Restitution.

▆ The United States asks that defendant be ordered to pay full restitution to the victims, the consumers, and that the restitution collected be returned to the people of Puerto Rico by assigning it to non-profit organizations. With the method it proposes to distribute any restitution collected, the United States implicitly admits that the victims are unidentifiable. Precisely because of this, the Probation Officer has determined that the Victim and Witness Protection Act does not apply in this case. *See* PSR, docket entry 99, p. 13, ¶ 56. We agree with the Probation Officer that, in the absence of identifiable victims, no restitution may be imposed. *See* U.S.S.G. § 5E1.1(a). Thus, the Court will not enter a restitution order in this case.

IV. Alternative fine based on gain or loss.

▆ The United States also requests that defendant be fined based on his pecu-niary gain or the pecuniary loss of others pursuant to 18 U.S.C. § 3571(d). Said statute, however, provides an alternative *statutory* maximum fine. *See* Application Note 2 to U.S.S.G. § 5E1.2. But, as with terms of imprisonment, the Guidelines establish a fine range which is determined by defendant's offense level. In this case, defendant having a total offense level of 6, his fine range is from $500 to $5,000. Any fine to be imposed by the Court will abide by this fine guideline range.

V. The inclusion in the PSR of the administrative charge.

Finally, the United States requests that the PSR be amended to reflect that the Program for Milk Quality, Office for the Milk Regulation of the Milk Industry filed an administrative complaint in 1997 against defendant for milk adulteration, which was later dismissed per stipulation of the parties upon payment of a $1,000.00 fine. Defendant has not objected to this request. The PSR shall then be amended to include all relevant information about this administrative charge.

VI. Conclusion.

In view of the findings made above disallowing the upward adjustments for loss under U.S.S.G. § 2F1.1(b)(1) and abuse of a position of public trust under U.S.S.G. § 3B1.3, defendant's previously determined base offense level of 6 is only increased by 2 levels for more than minimal planning under U.S.S.G. § 2F1.1(b)(2)(A) and reduced by 2 levels for defendant's acceptance of responsibility under U.S.S.G. § 3E1.1(a). Based on a total offense level of 6 and a Criminal History Category of I, the guideline imprisonment range in this particular case is from 0 to 6 months, with a fine range of $500 to $5,000. Defendant shall be sentenced accordingly.

SO ORDERED.