**UNITED STATES of America,
Plaintiff,**

v.

**Terrence SMITH, Defendant.**

**No. 99–6146–CR.**

United States District Court,
S.D. Florida.

Nov. 9, 2000.

Donald Chase, II, Ft. Lauderdale, FL, for Plaintiff.

Roderick Darrell Vereen, Miami, FL, for Defendant.

### CORRECTED ORDER ON MOTION FOR DOWNWARD DEPARTURE

FERGUSON, District Judge.

The threshold question is whether the failure of the government to charge the quantity of drugs involved in a conspiracy, so that the jury would have been required to find the amount of drugs necessary to support a mandatory sentence of life imprisonment, prevents the court from making the finding as a basis for imposing a sentence which increases the statutory maximum.

Prior to the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) this court may have been required to impose a life sentence in an uncomplicated hearing. *Apprendi* holds that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, *and* proven beyond a reasonable doubt." *Id.* at 2355 (emphasis added).

Terrence Smith ("Smith"), a 26–year old African–American male and admitted crack cocaine addict, delivered the controlled substance to a police informant who was posing as a purchaser. No arrests were made at the time. Days later Smith and three (3) others were arrested in spectacular pre-dawn home raids conducted by a black-clad county police SWAT team-events witnessed and recorded by the invited news media. Vanessa Bauza, *Four Arrested in Pre–Dawn Drug Bust*, Sun Sentinel, July 30, 1999, at 3B. The case was handed over to the Office of the United States Attorney for the purpose of securing the harsher penalties for crack cocaine possession provided for under federal laws.[1]

The indictment charged Smith with a conspiracy to possess with the intent to distribute cocaine and possession of cocaine. He was found guilty on both counts. The indictment did not charge the amount necessary to trigger the application of Title 21 U.S.C. § 841(b)(1)(A)(iii) and the United States Sentencing Commission Guidelines ("U.S.S.G."), § 4B1.1 (1998) which in combination would mandate imposition of a life sentence in light of the defendant's criminal history. At trial the parties stipulated that the substance seized was crack cocaine. There was also an agreement that the police chemist, if called to the witness stand, would testify consistent with his report that the quantity of drugs seized was 55.6 grams. There was no stipulation, however, as to the quantity of drugs.

Smith argued in his motion for downward departure, among other things, that the court could and should impose a sentence less than the life sentence found applicable in the presentence report. The government contends that failure to charge that the substance seized was more than 50 grams is legally insignificant because the amount of 55.6 grams was shown at trial by uncontroverted evidence.

## Background Facts

The buy-bust sting operation which led to Smith's arrest had targeted a suspect named Gregory Jackson ("Jackson"). Jackson permitted Smith to handle the $1,875 transaction because he did not know and was suspicious of the person who would be making the buy. Smith, who at the time was only a knowing spectator, urged Jackson to go ahead with the sale because the buyer, Jimmy Tucker ("Tucker"), was his cousin. It was disputed whether Smith knew that Tucker was working for the police at the time. Smith took over the negotiations and made the delivery of Jackson's cocaine to the informant, Tucker, for which he was to be later compensated with a small amount of drugs for personal use. The indictment charged Smith and Jackson with conspiring between themselves and with others to possess with the intent to distribute cocaine.[2]

---

**1.** It has been noted by several researchers and writers that the "war on drugs" has been waged primarily in the inner-cities against low-level African–American street dealers and users. Common police tactics include massive street sweeps, buy-bust operations, home raids, racial profiling and prosecution under draconian federal laws. *See Punishment and Prejudice: Race Disparities in the War on Drugs*, 12 Hum. Rts. Watch 2(G), at § VI (2000) (number of African–American incarcerated for drug-related offenses a "national scandal"); *see also* Stuart Taylor, *Politics, Not Justice Motivate Drug Policy*, Daily Business Review, Nov. 6, 1999, at A6 (African–Americans make up nearly 88% of all persons incarcerated for drug offenses which reflects racism in drug law enforcement policies).

Taylor notes that Seventh Circuit Court of Appeals Judge Richard Posner, distinguished jurist and writer, has also described federal penalties for nonviolent drug offenses as "savagely severe."

As a fundamental matter the wisdom of any congressional enactment is not open to question by the courts. Invidious discrimination in the application of federal drug laws, however, may raise a judicial question which, someday, may be addressed.

**2.** The parties to the alleged conspiracy were Smith, Jackson and the police informant Tucker. Because Tucker was an agent of police officers Smith and Jackson could not have conspired with him. *U.S. v. Kelly*, 888 F.2d 732, 740 (11th Cir.1989). There might

Smith's history from childhood would be a nightmare for a health care professional. He was diagnosed by the age of ten (10) as emotionally unstable. His mother, who has been a county correctional officer for over fifteen (15) years, described him as "hyperactive", inattentive and unable to control anger. Smith was treated with Ritalin for a period of time for his hyperactivity and was later given therapy in a neighborhood mental health clinic. That treatment was discontinued by the age of 14. No records were available as to the diagnosed disorder or to show whether the treatment should have continued. What is undisputed is that the defendant began to self-medicate, with controlled substances, as a child. He describes the daily use of marijuana, alcohol and crack cocaine beginning at age fifteen (15), paid for with proceeds from petty crimes for which he was in and out of prison. At one point he enrolled in a drug treatment program seeking help but did not complete the program. Smith dropped out of high school in the eleventh grade where he was enrolled as a special education student.

Of his nineteen (19) criminal history points, enough to make him a career offender, fourteen (14) are based on seven (7) arrests for possession of crack cocaine. One of his offenses was violent where the victim was robbed at knife point by a gang of four (4) and deprived of $12 and two gold chains. For the offense Smith was sentenced to thirty (30) months imprisonment. Two (2) points were assessed pursuant to U.S.S.G. § 4A1.1(e) because this latest drug offense was committed less than two (2) years after he had completed a sentence for conviction of petite theft.

*Failure To Charge Drug Quantity*

■ The question is what offense level the court should apply where the government fails to charge and a jury makes no finding as to the quantity of a controlled substance involved in the unlawful transaction. With no clear precedent this court will use the lowest quantity considered by the sentencing guidelines or statute where there has been no finding by the jury as to the drug quantity. As will be shown below it makes little difference in the sentence for a career offender where the controlled substance is crack cocaine. Smith's base offense level as computed by the U.S. Probation Office was 32 on a finding that the defendant was responsible for at least 50 grams of cocaine. The base offense level was enhanced by five levels pursuant to U.S.S.G. § 4B1.1 applicable to career offenders because the defendant had three (3) prior offenses which involved acts of violence or controlled substances.

*Sentence Calculation*

It is not disputed that as a career offender Smith's criminal history category is VI. For cocaine base U.S.S.G. § 2D1.1(c)(14) fixes a base offense level of 12 where the quantity is less than 250 MG. At a base offense level 12 for an offender in a Criminal History Category VI the sentencing range is 30–37 months. U.S.S.G. § 4B1.1, which mandates that the

---

have been an *attempt* to conspire involving Tucker but that is not the charged offense. As defense counsel argued during the trial, a finding of a conspiracy must look to the relationship between Smith and Jackson.

There was a single conspiracy-to sell drugs to Tucker. As found in the presentence report and shown by the proof presented at trial Jackson was the source-owner of the cocaine. Smith offered to aid and abet Jackson's attempt to consummate a drug transaction with Tucker. He was simply Jackson's agent with no interest, actual or expectant, in the cocaine or any proceeds that may have derived from the transaction.

The defendant argues that the object of the conspiracy was to distribute cocaine to the government's agent and that Smith, as Jackson's agent, stood in the shoes of his absent principal in committing the overt acts. As the argument continues, Smith could not have consummated a completed conspiracy with the government's informant any more than Jackson could have done so. As between Smith and Jackson, the argument concludes, there is no completed conspiracy.

On closer examination the point has appeal.

defendant be placed in a Criminal History Category VI (on the horizontal scale of the guideline sentencing table), is triggered again to greatly enhance the offense level (on the vertical scale of the sentencing table). It provides: "If the offense level for a career criminal from the table below is greater that the offense level otherwise applicable, the offense level from the table below shall apply." U.S.S.G. § 4B1.1. The guideline base offense level is tied to the statutory maximum sentence that could be imposed for the offense.

Section 841(b)(1)(C) of the Act, which this Court now applies to the offense of conviction, mandates no minimum sentence but authorizes the court to impose a sentence of not more than thirty years. U.S.S.G. § 4B1.1 provides that "[i]f the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply." The table provides that where the offense statutory maximum is 25 years or more the offense level is 34. Because the statutory maximum sentence in this case is thirty years, the offense level (on the vertical scale) is nearly tripled from 12 to 34. Thus, for example, the sentencing range where a conviction is for a $20 purchase of crack cocaine by an addict who has at least two prior convictions for the same type offense is a horrific 262–327 months of imprisonment—*higher than the base offense level for second degree murder. See* U.S.S.G. § 2A1.2.

*Role Adjustment*

██ In the opinion of the prosecutor, as incorporated into the presentence report, Smith is not entitled to a role adjustment because he was as culpable as the cocaine supplier-who has been released from custody pursuant to an agreement with the government that he cooperate with county police officers. Considering the facts stated above along with the evidence heard at trial the court disagrees. Smith was a late-comer to the attempted conspiracy. He did not suggest the crime, had no cocaine or access to a large quantity of cocaine and claimed no right in the fruits of the crime. Although the overt act, exchange of monies for the cocaine, was facilitated by Smith's unsolicited intercession, the agreement preceded his entry. He was far less culpable than Jackson. For that reason Smith is entitled to a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2(b). Accordingly the base offense level is adjusted downward from 34 to 32. At level 32 the sentencing range is 210–262 months. If it is determined that further downward adjustments are not permitted the sentence imposed would be 210 months.

*Downward Departure*

Two final questions raised at the sentencing hearing by the motion for downward departure are: 1) whether U.S.S.G. § 4B1.1, which mandates that every offender with two (2) prior felony convictions, one of which involved an act of violence or a controlled substance, "in every case shall be Category VI," precludes the sentencing court from considering the seriousness of the offenses that make up the criminal history and 2) assuming that the answer is no, the next question is whether a downward departure is justified on the facts of this case.

Except for his involvement in the 1994 gang-type robbery when he was 21–years old all of the defendant's convictions have been for non-violent offenses including loitering, petite theft, possession of controlled substances and traffic violations. Smith's criminal history category significantly over-represents the seriousness of his criminal history. U.S.S.G. § 4A1.3(e) permits the court to consider a downward departure from the applicable sentencing guideline range where it finds that a defendant's criminal history is significantly less serious than that of most defendants in the same criminal history category. The likelihood of recidivism, another factor the court must consider when deciding a motion for downward departure, is less a

factor where the prior offenses are minor, the offender is youthful and a reduced sentence would still be a lengthy one.

■ The seriousness of prior offenses is a factor ordinarily considered in determining the criminal history category. However, the factor cannot be considered here for criminal history purposes because U.S.S.G. § 4B1.1 mandates that a career offender shall be Category VI without regard for the seriousness of the prior offenses. There is no express provision in the guidelines, however, against considering the seriousness of the offense, along with other circumstances, in departing downward for the offense level. U.S.S.G. § 5K2.0 expressly permits the court to "depart from the guidelines, even though the reason for departure is taken into consideration in determining the guideline range ... if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is ... excessive." *See also U.S. v. Webb* 139 F.3d 1390, 1394 (11th Cir.1998)(holding that downward departure may be considered for career offenders if that category over represents the seriousness of defendant's criminal history).

As noted in *Guideline Sentencing: An Outline of Appellate Case Law on Selected Issues,* 1998 Fed. Judicial Ctr. 233 "[a] Nov. 1, 1994, addition to § 5K2.0's commentary makes a limited allowance for a totality of circumstances departure ...." One court, in a case decided after the 1994 addition to U.S.S.G. § 5K2.0, noted that a downward departure could be based in part on a "confluence of circumstances [that] was not taken into account by the Guidelines." *U.S. v. Broderson,* 67 F.3d 452, 459 (2nd Cir.1995).

■ There is, similarly, a confluence of circumstances in this case, none of which standing alone may have warranted departure, but are present to an unusual degree which distinguishes this case from the "heartland" cases covered by the guidelines. The investigation which led to Smith's arrest was part of a series of sting and raid operations by Broward County police in Smith's neighborhood which nabbed a number of suspects. Most of those arrested were incarcerated and indicted. They were all more culpable than Smith and entered into plea agreements for significantly reduced sentences.[3] Smith, whose involvement was peripheral, was the only known crack addict among the suspects. He walked into the sting operation where the suspicious codefendant dared to trod-consistent with one whose judgment is impaired by drug abuse and a low aptitude or learning disability. His early treatment for an emotional or mental disorder, combined with a chronic addition to controlled substances, and classification as a special education student, evidences a diminished capacity to control behavior that he knew was wrongful. Smith testified, consistently, that the addiction had taken over his life.

## CONCLUSION

In the view of this Court the nature of the offenses which makes Smith a career offender, his impaired ability to control his behavior, the circumstances of his involvement in the offense, the mostly nonviolent criminal history and the drastic disparity in sentences of more culpable offenders make this the unusual case where a downward departure to a sentence more consistent with the guidelines is warranted. A

---

**3.** Tucker, the paid informant, was also a seller of crack cocaine. He was never charged for his crimes. Tucker was solicited by Kenneth Ruff ("Ruff"), who had been arrested in connection with this case and was being held without bond. The purpose was to make a case against Gregory Jackson in order to secure a reduction of his own sentence. Both

Ruff and Tucker are cousins to Smith. Ruff, a reputed leader in community drug trafficking activities, made a significant contribution to police investigations into drug use and sales elsewhere in the county. In exchange for substantial cooperation his sentence was reduced to two (2) years imprisonment.

sentence of ten (10) years is appropriate in light of all the circumstances including the defendant's need for a long term inmate treatment program for mental illness and drug abuse. A six-level downward departure from 32 to 26 for a Criminal History Category VI offender brings the guideline sentencing range down to 120–150 months. Accordingly, the defendant's Motion for Downward Departure is **GRANTED**.