**UNITED STATES, Appellee,**

v.

**Michael G. SCHLISSER, Defendant–
Appellant.**

No. 04–6501–CR.

United States Court of Appeals,
Second Circuit.

Feb. 24, 2006.

484

Roger Bennet Adler, New York, New York, for Defendant–Appellant.

Katherine Polk Failla and Marc L. Mukasey, Assistant United States Attorneys, (David N. Kelly, United States Attorney, on the brief), New York, New York, for Appellee.

PRESENT: Hon. DENNIS JACOBS, Hon. REENA RAGGI, Circuit Judges.*

### SUMMARY ORDER

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 24th day of February, two thousand and six.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED**.

Plaintiff–Appellant Michael Schlisser appeals from the judgment of conviction entered on November 29, 2004 in the United States District Court for the Southern Dis-

---

* The Honorable Robert D. Sack recused himself prior to oral argument and took no part in the disposition of this appeal. It was decided by the remaining two members of the panel, who are in agreement. *See* 2d Cir. R. § 0.14(b).

trict of New York (Berman, *J.*), pursuant to a jury verdict convicting Schlisser of one count of securities fraud, in violation of 15 U.S.C. §§ 78j(b) and 78ff, 17 C.F.R. § 240.10b–5, and 18 U.S.C. § 2; and ten counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. Schlisser was sentenced, pursuant to the then-mandatory Sentencing Guidelines, principally to 60 months of imprisonment. Familiarity is assumed as to the facts, the procedural context, and the specification of appellate issues.

(1) Schlisser argues that testimony by witness Alfred Leubert, one-time business partner of Schlisser's, violated his Sixth Amendment rights under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Specifically, Schlisser challenges Leubert's testimony regarding the kinds of background questions investors asked about the d-merc company and Schlisser, to which Leubert replied that the answers were in the private placement memorandum ("P.P.M."). Schlisser argues that this testimony introduced statements of allegedly defrauded investors without allowing him the opportunity to "probe the impact of the P.P.M. upon their investment decisions."

■ First, the statements made by potential investors to Leubert were neither "testimonial" nor "hearsay", and are therefore outside the ambit of *Crawford*. Though the Supreme Court has not defined "testimonial", this Court has interpreted *Crawford* to cover "sworn evidentiary statements, such as affidavits, depositions, grand jury testimony, and trial testimony, as well as unsworn declarations given to the police." *Mungo v. Duncan*, 393 F.3d 327, 332 n. 2 (2d Cir.2004), *cert. denied*, 544 U.S. 1002, 125 S.Ct. 1936, 161 L.Ed.2d 778 (2005). Moreover, Leubert's testimony as to the questions asked by investors was

not offered for the truth of what the investors stated; and Leubert's assumptions as to why the questions were asked, are not out of court statements.

■ Even if we were to find that Leubert's testimony falls within *Crawford*, its admission was harmless. *See United States v. McClain*, 377 F.3d 219, 222 (2d Cir.2004) ("violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review"). The testimony bears upon the materiality of Schlisser's misrepresentations to the investors. The government offered other evidence on this point: Arthur Boden testified that Schlisser's representations were "the most important factor" in Boden's decision to invest; and an expert witness testified that information on Schlisser's background would have been considered material to investors.

■ (2) Schlisser challenges the jury charge on the willfulness element of the securities fraud count. *See* 15 U.S.C. § 78ff. A "willful" violation of a statute is one in which " 'the defendant acted with knowledge that his conduct was unlawful.' " *Bryan v. United States*, 524 U.S. 184, 191–92, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994)). With respect to securities fraud, the government must prove "a realization on the defendant's part that he was doing a wrongful act" and that the act was "wrongful under the securities laws." *United States v. Dixon*, 536 F.2d 1388, 1397 (2d Cir.1976) (internal quotation marks omitted); *United States v. Peltz*, 433 F.2d 48, 54–55 (2d Cir.1970). Here, the jury was charged as follows:

> An act is done "willfully and knowingly" if it is done deliberately and purposefully. That is the defendant's act must have been the product of the defendant's

conscious objective rather than the product of a mistake or accident or mere negligence or some other reason. "Unlawfully" simply means contrary to law. The defendant need not have known that he was breaking any particular law or any particular statute. A defendant need only have been aware of the generally unlawful nature of his act. "Intent to defraud" means to act knowingly and with the intent to deceive, ordinarily, but not necessarily for the purpose of causing some loss to another or to bring about some gain to oneself.

The district court also instructed the jury that the government was required to prove the absence of good faith by Schlisser.

These instructions, read as a whole, adequately instructed the jury as to willfulness. The district court instructed the jury that the defendant needed to "have been aware of the generally unlawful nature of his act." This is not one of the "exceptional cases" in which the government must prove that the defendant's specific purpose was to violate a specific law. *United States v. George*, 386 F.3d 383, 390 (2d Cir.2004). Such specific intent is only required "when those activities classified as illegal do not on their own provide notice of their criminality, either because of the difficulty of comprehending the legally acceptable parameters of the activity or because the criminal actus reus can often be undertaken with a lawful purpose." *Id.* Schlisser's misrepresentations—such as the claimed existence of a non-existent company—are not of that sort.

■ (3) Schlisser challenges the jury charge on false material statements. A "material" issue is one for which it is substantially likely that a reasonable investor "would consider it important in making an investment decision." *United States v. Bilzerian*, 926 F.2d 1285, 1298 (2d Cir.

1991); *Basic v. Levinson*, 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Here, the jury was charged as follows:

> If you find that the Government has established beyond a reasonable doubt that a statement was false or omitted, you must next determine whether the fact misstated was material under the circumstances. A material fact is one that would have been significant to a reasonable investor's investment decision. This is not to say that it is a defense to the crime if the material representation would not have deceived a person of ordinary intelligence. Once you find that there was a material misrepresentation or omission of a material fact, it does not matter whether the intended victims were gullible buyers or sophisticated investors, because the securities laws protect the gullible and unsophisticated as well as the experienced investor.

To the extent that Schlisser challenges the materiality element of the charge, his argument plainly fails: the charge specifically instructs that statements must be "significant" and deceptive to "a person of ordinary intelligence." Schlisser's better argument is that the charge fails to instruct the jury that the government must prove actual reliance by a victim. While the securities fraud statute speaks only in terms of "material[ity]," *see* 15 U.S.C. § 78j(b); 17 C.F.R. 240.10b–5, the very same statutory language has been interpreted in the civil context to require actual reliance. *See, e.g., Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005). The government offers no rationale to adopt a different definition in the criminal context, where we typically interpret liability *more* narrowly.

We need not, however, decide whether actual reliance is a required element for criminal violations of 10b, because any error in the charge does not rise to the level of plain error. *See* Fed.R.Crim.P. 30(d) (the failure to object precludes appellate review except for plain error); *Johnson v. United States,* 520 U.S. 461, 464, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). Plain error is (1) error, (2) that is plain, (3) affects substantial rights, and (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings. *United States v. Williams,* 399 F.3d 450, 454–55 (2d Cir. 2005); *United States v. Thomas,* 274 F.3d 655, 667 (2d Cir.2001) (*en banc*). Given the uncertainty at this time as to whether a criminal 10b violation requires an actual reliance charge, the error, if any, was not plain. Moreover, the government presented overwhelming evidence of actual reliance on Schlisser's misstatements: all of the investors signed the purchase agreement pursuant to the P.P.M., both of which contained material misstatements; Borden testified to his reliance on Schlisser's statements; and the government established that Schlisser's purpose was to defraud investors. *See Neder v. United States,* 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (failure to instruct on element was harmless where evidence was overwhelming); *Johnson,* 520 U.S. at 469–70, 117 S.Ct. 1544 (failure to submit an element of materiality to jury in perjury case was harmless where evidence was overwhelming).

■ (4) Schlisser argues that the district court's use of the 2001 Sentencing Guidelines violated the *ex post facto* clause because the wire fraud and securities fraud offenses occurred in 2000. *See* U.S.S.G. 1B1.11(b)(1). The indictment, however, charged Schlisser with fraud through November 2001, and the evidence presented at trial demonstrated that Schlisser's fraudulent conduct continued into 2001. Use of the 2001 Guidelines was therefore appropriate. *See United States v. Broderson,* 67 F.3d 452, 456 (2d Cir. 1995) ("The last date of the offense, as alleged in the indictment, is the controlling date for *ex post facto* purposes.").

■ (5) Schlisser raises a *Crosby* challenge to his sentence, which was entered under the mandatory Guidelines regime. *See United States v. Crosby,* 397 F.3d 103, 118 (2d Cir.2005). After determining the Guidelines sentence, the district court stated that it would impose the same sentence even if (as it has turned out) the Guidelines are advisory, and not mandatory. The district court further recited that the sentence was appropriate in light of "the nature and circumstances of the offenses of conviction, the history and characteristics of the defendant, the seriousness of the offenses, and the need to promote respect for the law, reasons of deterrence and reasons of just punishment." The district court thus treated the Guidelines as advisory and expressly considered the factors in 18 U.S.C. § 3553(a), as required in the post-*Crosby* regime. *Cf. United States v. Fuller,* 426 F.3d 556, 560 (2d Cir.2005) (remanding for re-sentencing where "the District Court imposed its alternative non-Guidelines sentence on the assumption that the Guidelines 'don't exist at all'—and thereby acted on a proverbial blank slate without explicitly considering all the factors listed in 18 U.S.C. § 3553(a)"). We therefore affirm the sentence, though imposed in error under the Guidelines, because the error was harmless given the district court's express consideration of the very factors now required. *See United States v. Booker,* 543 U.S. 220, 268, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) ("in cases not involving a Sixth Amendment violation, whether resentencing is warranted or whether it will instead be sufficient

to review a sentence for reasonableness may depend upon application of the harmless-error doctrine").

■ (6) Finally, Schlisser argues that the district court erroneously included a $1 million investment pledge by "PlasmaNet" in its computation of the amount of loss for purposes of determining the proper Guidelines sentencing range. (The 2001 Sentencing Guidelines provide for an upward enhancement to the base offense level depending on the amount of loss. *See* U.S.S.G. § 2B1.1(b)(1).) The challenged $1 million was never actually paid by PlasmaNet, and Schlisser argues that there was never any serious plan for PlasmaNet to provide it.

We disagree. First, included in the amount of "loss" are both actual and intended losses. *See* U.S.S.G. § 2B1.1, comment. Second, the district court did not clearly err in finding that the PlasmaNet investment pledge was genuine and critical to the success of Schlisser's unlawful scheme, and the inclusion of the $1 million was therefore appropriate. *United States v. Franklyn*, 157 F.3d 90, 97 (2d Cir.1998) ("In reviewing a district court's sentencing decision on appeal, this Court 'accepts the findings of fact of the district court unless they are clearly erroneous and ... gives due deference to the district court's application of the guidelines to the facts.'") (quoting *United States v. Davis*, 967 F.2d 84, 88–89 (2d Cir.1992)).

For the foregoing reasons, the judgment of the district court is AFFIRMED.